**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Rhonda L. Tracy,

    Plaintiff,

    v.

Northrop Grumman Systems Corporation,

    Defendant.

Civil Action No. 1:08cv126

Judge Michael R. Barrett

**ORDER**

This matter is before the Court pursuant to Defendant's motion to dismiss the second amended complaint (Doc. 10)[1] pursuant to Rule 12(b)(6). Plaintiff filed a memorandum in opposition (Doc. 14) to which Defendant's replied (Doc. 16). This matter is now ripe for review. For the reasons that follow, Defendant's partial motion to dismiss is GRANTED.

I.    Background

Plaintiff Rhonda L. Tracy ("Tracy") brought this action against Defendant, Northrop Grumman Systems Corporation "(Northrop"), for damages and injunctive relief arising from Northrop's wrongful termination of her employment in violation of the public policy of the State of Ohio and for unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964.

---

[1] Plaintiff subsequently filed a Third Amended Complaint that attached the "Right to Sue" letter from the EEOC and added Title VII claims. The parties and the Court agreed that the pending motion did not need to be refiled to address the Third Amended Complaint since the public policy claim is the same in the Second Amended Complaint as it is in the Third Amended Complaint. Therefore, the motion is not moot.

Tracy was employed by Northrop from April 25, 1997 through October 16, 2007. (Doc. 23, ¶6.) Tracy began her employment on April 25, 1997, as an Assembler and on September 9, 1997, Tracy was promoted to the position of Manufacturing Technician. (*Id.* ¶7-8.) In May 2003, Tracy was promoted to the position of Quality Technician. (*Id.* ¶9.) Finally, in August 2006, Tracy was classified as a Lead Inspector. (*Id.* ¶10.)

During her employment as Quality Technician and Lead Inspector, Tracy was responsible for ensuring that components received into Northrop's factory met quality standards set forth in Northrop's contract with the United States government. (*Id.* ¶12.) Tracy was also assigned to perform internal ISO 9000 audits and she conducted floor inspections of production activity. (*Id.*) Northrop's contract with the United States government requires compliance with ISO 9000 standards. (*Id.*) Tracy asserts that she was frequently criticized and chastised by her direct supervisor, Bobby McAlpine ("McAlpine"), for refusing to approve incoming parts which she claimed did not comply with Northrop's contract with the United States government. (*Id.* ¶13.)

Tracy asserts that McAlpine frequently accused her of holding up production and requested that she approve non-conforming components. (*Id.* ¶13.) During the course of her employment, Tracy complained to Northrop's President, Martin Simoni, and Jane Diles, from the Human Resources Department, about McAlpine pressuring her to approve parts which she felt did not comply with the quality standards set forth in Northrop's contract with the United States government. (*Id.* ¶15.)

Despite her complaints, McAlpine's conduct persisted. (*Id.*) In June 2007, Tracy was directed by McAlpine to perform an internal ISO 9000 audit. (*Id.* ¶16.) Tracy asserts that she followed the written audit procedures and issued corrective action reports to several

2

of Northrop's departments which did not meet compliance standards. (*Id.* ¶16.) Later, Tracy was given a written warning for insubordination. (*Id.*) On October 4, 2007, Northrop terminated Tracy's employment. (*Id.* ¶17.)

Defendant has moved to dismiss the public policy claim.

II. Standard of Review

A motion to dismiss pursuant to Rule 12 (b)(6) operates to test the sufficiency of the complaint. The court is required to construe the complaint in the light most favorable to the Plaintiff, and accept all well-pleaded factual allegations in the complaint as true. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) and *Lewis v. ACB Business Services*, 135 F.3d 389, 405 (6th Cir. 1998). A court, however, will not accept conclusions of law or unwarranted inferences which are presented as factual allegations. *Blackburn v. Fisk University*, 443 F.2d 121, 124 (6th Cir. 1974). A complaint must contain either direct or reasonable inferential allegations that support all material elements necessary to sustain a recovery under a viable legal theory. *Lewis v. ACB*, 135 F.3d at 405 (internal citations omitted). As the Supreme Court held in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a complaint must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570 (rejecting the traditional 12(b)(6) standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). To survive a motion to dismiss, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* at 555. "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563. *See also Association of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502

F.3d 545, 548 (6th Cir. 2007).

   III.   Legal Analysis

Tracy asserts that clear public policy exists sufficient to justify an exception to the Ohio employment-at-will doctrine. Tracy identifies two policies: (1) "a clear public policy in favor of employees ensuring that products comply with contractual terms" and (2) a public policy that prohibits "the submission of goods to the federal government which do not comply with contractual terms." (Doc. 23, ¶18.) Plaintiff argues that the former is supported by the Uniform Commercial Code and the common law of the State of Ohio and the latter is supported by 31 U.S.C. § 3729 (the Civil False Claims Act), 18 U.S.C. § 287 (the Criminal False Claims Act), and the tort law of fraud. (Id.) Tracy further asserts that the public policy is jeopardized by allowing employees, such as Tracy, to be discharged.

Northrop argues that Ohio law does not recognize the sources of public policy cited by Tracy as an exception to the employment-at-will doctrine and thus no legal grounds exist for Tracy's public policy tort claim. Further, Northrop argues that the anti-retaliation provisions of the Federal False Claims Act provide a remedy that would vindicate the public policy concerns at issue.

Employment in Ohio is generally governed by the common law doctrine of employment-at-will. *Wiles v. Medina Auto Parts,* 96 Ohio St.3d 240, 241 (2002). Under this doctrine, both the employer and the employee are free to end the employment relationship for any reason, and as a result, an employee may not bring suit for wrongful discharge. *Id.* The Ohio Supreme Court, however, recognized an exception to this doctrine when an employee has been wrongfully discharged in violation of public policy as set forth in the statutory enactments, commonly referred to as a "Greeley claim." *Greeley v. Miami Valley*

4

*Maintenance Contractors, Inc.,* 49 Ohio St.3d 228 (1990). The Ohio Supreme Court later expanded the scope to encompass employees who have been wrongfully discharged in violation of public policy, not only as set forth in the Ohio Revised Code but also in violation of the Ohio and United States Constitutions, administrative rules and regulations, and common law. *Painter v. Graley,* 70 Ohio St.3d 377 (1994).

In order for Tracy to have a viable cause of action in tort for wrongful discharge, in accordance with the law as set forth in *Greeley* and *Painter,* she must demonstrate each of the following elements: (1) that a clear public policy exists and is manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the "clarity element"); (2) that the dismissal of employees under circumstances like those involved in plaintiff's dismissal would jeopardize the public policy (the "jeopardy element"); (3) that the plaintiff's dismissal was motivated by conduct related to the public policy (the "causation element"); and (4) that the employer lacked an overriding legitimate business justification for the dismissal (the "overriding justification element"). *Collins v. Rizkana,* 73 Ohio St.3d 65, 69-70 (1995). The Court then concluded that the first two elements are questions of law and the latter two are questions of fact. *Id.*

### A. Clarity Element

To establish the clarity element, Tracy must demonstrate the existence of an established public policy that was violated by her discharge. In her Third Amended Complaint, Tracy identified four sources of public policy which include: (1) 31 U.S.C. § 3729 (the Civil False Claims Act); (2) 18 U.S.C. §287 (the Criminal False Claims Act); (3) The Uniform Commercial Code; and (4) common law prohibitions against fraud. (Doc. 23, ¶ 18.) Plaintiff argues that her public policy claim is that "she was discharged because she would

5

not commit fraud or violate the law and attempted to utilize her position of employment to prevent fraud." (Doc. 14, p8.) However, the policies identified in her Third Amended Complaint are: (1) "a clear public policy in favor of employees ensuring that products comply with contractual terms" and (2) a public policy that prohibits "the submission of goods to the federal government which do not comply with contractual terms." (Doc. 23, ¶18.)

Plaintiff also argues that her public policy claim draws, not from one specific statute, but from multiple sources and that the public policy must be examined in connection with all the sources she cites. (*Id*., p7-8.) However, Plaintiff does not cite any caselaw to support this contention and the Court has not found any. Plaintiff may cite to several sources of public policy but each must exist independently.

    1.    31 U.S.C. §3729

The Sixth Circuit recently held, in *Hill v. Mr. Money Fiance Company*, 2009 U.S. App. LEXIS 2228, *36 (Feb. 6, 2009), that one must comply with the requirements of the Federal Whistleblower Statutes, such as 31 U.S.C. §3729, in order to bring a Ohio public policy claim based upon those statutes. *See also, Yuhasz v. Brus Wellman, Inc.*, 341 F.3d 559, 568 (2003); *Kulch v. Structural Fibers, Inc.*, 78 Ohio St.3d 134 (1997); *Pytlinski v. Brocar Products, Inc.* 94 Ohio St. 3d 77 (2002). Thus, since Plaintiff did not allege that she complied with the Civil False Claims Act and the facts as set forth in the Third Amended Complaint do not support such a claim, her public policy claim under this statute can not survive. This does not mean that Plaintiff's wrongful discharge claim in violation of public policy is foreclosed at this point, only that we must now look to the other sources relied upon by Plaintiff. *See Collins v. Rizkana*, 73 Ohio St.3d 65, 73, (1995) ("In cases of

multiple-source public policy, the statute containing the right and remedy will not foreclose recognition of the tort on the basis of some other source of public policy, unless it was the legislature's intent in enacting the statute to preempt common-law remedies.")

2. 18 U.S.C. §287

Plaintiff also cites to the Criminal False Claims Act which makes it a felony to knowingly present "false, fictitious, or fraudulent" claims to the United States. 18 U.S.C. §287. The purpose of the statute is to "protect the funds and property of the Government from fraudulent claims, regardless of the particular form, or function, of the government instrumentality upon which such claims were made." *Rainwater v. United States*, 356 U.S. 590, 592 (1958). This statute provides for imprisonment and fines for individuals who are found to file false claims against the government. Based upon the facts as alleged, the clarity element has been satisfied as to this public policy.

3. UCC

Plaintiff next argues that public policy at issue here is established by the Uniform Commercial Code ("UCC"). Plaintiff relies on *Zajc v. Hycomp, Inc.,* 172 Ohio App.3d 117 (8th Dist. 2007)*,* to demonstrate that the Uniform Commercial Code ("UCC") is a recognized form of public policy. The transaction involved in *Zajc* was governed by the UCC. However, that is not the case in this matter. In addition, Plaintiff alleges that the public policy at issue is to ensure "that products comply with contractual terms." (Doc. 23, ¶18.) However, that is not one of the purposes of the UCC as set forth at O.R.C. §1301.02. Therefore, under the facts as alleged in this matter, the UCC is not an established public policy that was violated by Plaintiff's discharge.

4. Common Law

Finally, Plaintiff argues that the Ohio common law prohibitions against fraud recognize Plaintiff's claim as an actionable tort claim. The caselaw on common law sources is sparse. "In practice, the Ohio Supreme Court has usually found a clear public policy protecting an employee's activity only when there is a statute that prohibits firing employees for engaging in a particular protected activity" or put another way when "the wrongful discharge tort provides the remedy where the statute is silent." *Herlick v. Continental Airlines, Inc.*, 2005 U.S. App. LEXIS 21784, *16-17 (2005). However, the Supreme Court has made it clear that the common law could be a source from which to find clear public policy. *Id.*

Plaintiff relies on *Anders v. Specialty Chem. Resources,* 121 Ohio App.3d 348, 358 (1997) to support her argument. In *Anders,* the court ruled that an employee who refused to participate in an alleged insurance fraud and/or falsification scheme, including refusing to create documents to support the termination of two employees, set forth a violation of public policy sufficient to support a claim for relief. However, *Anders* is distinguishable from this case because the statutory alternatives to a tort claim, i.e., the whistleblower statute, were inadequate to protect the plaintiff's and public's interests. *Id.* Anders did not report anything, instead, he choose not to participate in activity he deemed to be illegal and was terminated for his refusal. Here, Plaintiff complained about her supervisor "pressuring her to approve parts which did not comply with the quality standards set forth in Defendant's contract with the United States government." (Doc. 23, ¶15.) This reporting aspect raises the public policy at issue to the level of whistleblower type behavior meant to be protected by the various whistleblower states. See O.R.C. 4113.52, 31 U.S.C. §§3729, 3730. Thus,

Plaintiff can not meet the clarity element.

B.     Jeopardy Element

To establish the jeopardy element, Tracy must demonstrate that without a common-law tort claim for wrongful discharge based on retaliation, dismissing employees under circumstances like those involved in plaintiff's dismissal would jeopardize the public policy. In evaluating this element, the Supreme Court of Ohio has stated:

> [t]here is no need to recognize a common-law action for wrongful discharge if there already exists a statutory remedy that adequately protects society's interests. ... In that situation, the public policy expressed in the statute would not be jeopardized by the absence of a common-law wrongful-discharge action in tort because an aggrieved employee has an alternative means of vindicating his or her statutory rights and thereby discourage an employer from engaging in the unlawful conduct.

*Wiles v. Medina Auto Parts,* 96 Ohio St.3d 240, 244 (2002)(internal citations omitted). Thus, "[i]t is unnecessary to recognize a common-law claim when remedy provisions are an essential part of the statute upon which the plaintiff depends for the public policy claim and when those remedies adequately protect society's interest by discouraging the wrongful conduct." *Leininger v. Pioneer Natl. Latex,* 115 Ohio St.3d 311, 317 (2007); *see also Desanzo v. Titanium Metals Corp.*, 351 F. Supp. 2d 769, 783 (S.D. Ohio 2005); *Kleinmark v. CHS-Lake Erie, Inc.*, 2008 U.S. Dist. LEXIS 52665, 13-14 (N.D. Ohio July 10, 2008).

Although the Criminal False Claims Act does not create a private right of action to enforce individual rights, there is a mechanism within the False Claims Act that allows private persons to initiate civil actions on behalf of the government, see 31 U.S.C. §§3729, 3730. In addition, 31 U.S.C. §3730(h) prohibits employers from retaliating against an

employee who participate in acts under this section.  Therefore, there is an adequate remedy available to satisfy the public policy concerns.  Furthermore, Ohio has its own whistleblower protection statute, O.R.C. §4113.52, which provides adequate remedies so as not to jeopardize the public policy.[2]

IV. Conclusion

Due to the above holdings, the final two elements of the *Greeley* claim do not need to be addressed. Therefore, Defendant's partial motion to dismiss is hereby GRANTED. This case shall proceed as to the remaining Title VII retaliation claim.

**IT IS SO ORDERED.**

*s/Michael R. Barrett*  
Michael R. Barrett, Judge  
United States District Court

---

[2]As it appears, based upon the facts as alleged in the Third Amended Complaint, Plaintiff may not be entitled to the remedies afforded here.  However, the jeopardy element is to protect society's interests, not necessarily a specific plaintiff.  *See Wiles v. Medina Auto Parts*, 96 Ohio St.3d 240, 244 (2002).